## WILLIAM A. HAM *vs.* BOARD OF POLICE OF THE CITY OF BOSTON.

Suffolk.    March 11. — June 28, 1886.    W. ALLEN & HOLMES, JJ., absent.

Under the St. of 1885, *c.* 323, the board of police of the city of Boston cannot remove an officer or member of the police, without assigning a cause for such removal, and giving to such officer or member an opportunity to be heard thereon.

PETITION alleging that, on or about February 18, 1858, the petitioner was appointed to the office of policeman by the mayor and aldermen of the city of Boston, and became a duly qualified member of the police force thereof; that he continued a member of said police force, under the authority of such appointment, until the passage of the St. of 1878, *c.* 244, which went into effect on May 14 of said year; that, by the provisions of this act, the government of said police force was vested in three commissioners, appointed by the mayor with the approval of the city council of said city, and the members of the then force were continued in office, subject, however, to removal by said commissioners for cause; that the petitioner was continued in his said office by the provisions of said act until the passage of the St. of 1885, *c.* 323, which went into effect on June 12 in said year; that, by this act, all the powers vested in said board of police commissioners by the St. of 1878, were vested in a board of police consisting of three persons appointed by the Governor of the Commonwealth, with the advice and consent of the

Council, and, by the provisions thereof, the then members of the police force existing at the time of the appointment of said board were continued in office upon the same tenure as before; that the petitioner was continued in office by said act, and held at said time the important office of chief inspector, to which he had been promoted in the year 1880, having, prior to said promotion, filled every other grade of office in said force; that after the passage of said act, Albert T. Whiting, William H. Lee, and William M. Osborne, all of said Boston, were duly claiming to be appointed as a board of police of said city under the provisions of said act, and as such are now exercising the powers of the same; that, on or about August 31, 1885, the petitioner received a communication in writing from said board, requesting him to resign his office as a member of the police force of said city on or before the first day of September next thereafter; that thereupon the petitioner inquired of said board as to the cause of such request, and if any charges had been brought against him, or if it, the board, had any to prefer, but the board refused to give any legal cause, and stated that no charges had been brought, and that they had none to prefer; that thereupon the petitioner refused to resign from said force, and on September 5 said board of police passed an order removing him from said police force, and have since refused to allow the petitioner, although willing, to perform the duties thereof; that, under the powers vested by the statute in said board of police, the board has authority only to remove him from his office of policeman for legal cause; that, in exercising such power of removal, they act in a judicial capacity, and can remove him only after charges have been preferred against him, notice thereof given him in writing, a hearing held thereon, with an opportunity for him to present his defence; that the board has refused so to exercise its power of removal, and has attempted to remove the petitioner summarily, and without any legal cause, and in so doing has exceeded its jurisdiction, and its action towards the petitioner is therefore illegal and void; that the action of said board tends to injure the petitioner's character and reputation; and that, by such attempted removal, if not restrained by this court, he may lose his rights to be retired upon a pension, to which his long years of service make him eligible.

The prayer of the petition was, that a writ of mandamus issue to the board of police of the city of Boston, commanding it to restore the petitioner to said office of policeman, or show cause why it should not do so.

The answer alleged that, by virtue of the powers conferred upon the respondent by the St. of 1885, c. 323, after full consideration and investigation, it passed the following vote: "Boston, September 5, 1885. Voted, that Capt. William A. Ham be and he is hereby discharged from the police force of the city of Boston for inefficiency and lack of confidence on the part of this board, to take effect from date;" and that the petitioner had no right, as alleged in his petition, to be retired upon a pension.

At the hearing, before C. Allen, J., the following facts appeared, and upon them the case was reserved for the consideration of the full court.

The vote of the police commissioners set up in the answer was passed by them without any formal charges being preferred against the petitioner, and without any hearing of him before the commissioners.

By the St. of 1876, c. 16, the Boston Police Relief Association was incorporated, and it passed certain by-laws, under which the petitioner claims to be entitled to certain benefits.

Under a city ordinance of 1876, continued in 1880, a large fund has accumulated, and the petitioner claims to be entitled to certain benefits under the same.

Before the removal of the petitioner, the police commissioners orally stated to him that they did not consider him an efficient officer, and that both they and the public had lost confidence in him, and for that reason they proposed to remove him.

*R. D. Smith & C. A. Prince*, for the petitioner.

*A. J. Bailey*, for the respondent.

C. ALLEN, J. This case grows out of the legislation transferring the administration of the police of the city of Boston from a board of commissioners appointed by the city to a board appointed by the Governor of the Commonwealth. It is conceded by the counsel for the respondent, that, under the St. of 1878, c. 244, the board of police commissioners could only remove officers or members of the police department for cause:

and that, before a removal for cause could be made, the party must have had notice and an opportunity to be heard. But it is contended that, under the St. of 1885, *c.* 323, the new board of police thereby created has power to remove an officer or member without assigning any cause, and without notice or hearing. And this presents the question to be determined.

Section 2 of this statute is as follows: "The board of police shall have authority to appoint and establish and organize the police of said city of Boston, and make all needful rules and regulations for its efficiency. All the powers now vested in the board of police commissioners in said city of Boston, by the statutes of the Commonwealth or by the ordinances, by-laws, rules and regulations of said city, except as otherwise hereby provided, are hereby conferred upon and vested in said board of police." The power of removal which was vested in the board of police commissioners was expressed in the following language in the St. of 1878, *c.* 244, § 3 : " Any of said officers or members of the department may be removed by the board for cause." The same power is given to the new board of police, unless in the act of 1885 it is otherwise provided. It may be at once assumed that it is not necessary that it should be otherwise provided in express terms, if it can be seen from the general purpose and scope of the act that such a change was intended. There is nothing in the act of 1885 which in terms provides that the new board may make such removals without assigning any cause. It is necessary, therefore, to examine and see if such authority is fairly implied. Section 2 provides that the board shall have authority to appoint and establish and organize the police. The apparent purpose of this provision as to appointments was to show that the new board could act without the concurrence of the mayor of the city. Formerly, by the St. of 1878, *c.* 244, § 3, the appointment of the superintendent of police, the deputy superintendent, and the captains was subject to approval by the mayor. Now, the new board may make all appointments without such approval; that is, when appointments are to be made. The general power to " establish and organize " the police seems to be only a compact and summary way of stating that the power of the old board in these respects is transferred to the new board. The powers of the old board were expressed more at length, and

included the power to establish and organize the police, though these exact terms were not used. There may be some slight variations in details, but in substance and effect this power was vested in the old board; and yet that board had not the power to remove without cause. The power to remove without cause is not, therefore, to be inferred from the authority to establish and organize the police. The use of this phraseology does not imply any larger power in respect to removals than the old board had.

Section 3 of the act of 1885 provides that "the members of the Boston police force in office when the said board of police are first appointed shall continue to hold their several offices until removed or placed on the retired list by the said board; and the present rules and regulations of the board of aldermen for the government of the police shall continue in force until otherwise ordered by said board of police." This is the only provision in the St. of 1885 which makes any express mention of removal from office or placing police officers on the retired list. Looking at this statute alone, no one could tell what is meant by the words "placed on the retired list." If the provision as to removal stood alone, and there was nothing to show in what sense it was intended, it might well be held to imply an absolute and arbitrary power of removal. But in the preceding section express reference is made to " the powers now vested in the board of police commissioners by the statutes of the Commonwealth," and this means by the St. of 1878. And the whole act of 1885 must be construed with reference to the St. of 1878, to which it refers, and which it supersedes. Especially the words " placed on the retired list " can only be understood by looking at the earlier statute, where detailed provision therefor is made; and, since these words are coupled with the mention of removal, a reference to the earlier statute, to assist in ascertaining the meaning of this word also, is naturally suggested. Looking then at that statute, it is found that the authority conferred by § 3 of the act of 1885 is copied literally from § 10 of the act of 1878, making the necessary changes as to the board by which the authority is to be exercised. And in the act of 1878, where it is provided that the members of the police force shall continue to hold office " until removed or placed on the retired list by the

said commissioners," the meaning is "until removed for cause," as provided in § 3 of that act. It thus appears that it was not the design of these words, as used in the St. of 1878, § 10, to confer any power of removal; this power had already been conferred and limited by § 3; and by § 10 it could not have been intended to enlarge the power of removal, so as to authorize the commissioners to remove officers without cause, since that would be plainly inconsistent with § 3; and indeed thus much is conceded. But since these words were literally copied into the St. of 1885, and the meaning of the words "placed on the retired list" must be sought in the St. of 1878, we do not see that it would be a fair construction to hold that the words "until removed" were intended to confer any greater power of removal than would exist under other provisions of the statute.

Looking now at the more general purpose and scope of the St. of 1885, we are not able to find any clear indication that the Legislature intended to confer upon the new board a merely arbitrary power of removal. It was the established policy under the St. of 1878, that the officers and members of the police force should only be removable for cause. Continuance in office is valuable to them, not merely as a means of present support and as a matter of reputation, but because there are incidental pecuniary benefits under the statute and city ordinance, which are referred to in the report. The new board has power to make all needful rules and regulations for the efficiency of the police, for the government and discipline of the department, and generally for its proper administration. It may also remove any officers or members of the department for cause; that is, for such cause as seems to it sufficient, after the party has had notice and an opportunity to be heard in defence or explanation of whatever may be suggested as a cause of removal. No express provision is made for any revision of the determination of the board; and there would appear to be no opportunity for such revision, unless perhaps by the courts, in case of an arbitrary exercise of the power, for a cause which is unreasonable and in law insufficient; as, for example, for refusing to contribute money for political purposes. St. 1884, c. 320, §§ 8, 11. We have nothing to do with the question whether, in transferring the administration of the police to a board of commissioners

appointed by the Governor, it would be better to give a larger power of removal. If such is the policy of the Legislature, it is easy to say so. But, looking at the St. of 1885, *c.* 323, as it stands, we are unable to see an intention to change the preceding policy in this respect, and accordingly must hold that the petitioner was improperly removed, no hearing having been accorded to him. *Mandamus to issue.*