# United States Court of Appeals
## For the First Circuit

No. 06-1874

LINDA JENESKI,

Plaintiff, Appellant,

v.

CITY OF WORCESTER; STEPHEN R. WILLAND;
DONALD H. ANDERSON; CARLENE BULL;
ROBERT J. HENNIGAN, JR.; DAVID M. MOORE;
RUTH N. BRAMSON, Massachusetts Administrator of Human Resources,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor IV, U.S. District Judge]

Before
Boudin, Chief Judge,
Torruella and Lynch, Circuit Judges.

Daniel J. Shea on brief for appellant.
Janet J. McGuiggan, Assistant City Solicitor, on brief for appellees City of Worcester, Stephen R. Willand, Donald H. Anderson, Carlene Bull and David M. Moore.
Sookyoung Shin, Assistant Attorney General, Government Bureau, and Thomas F. Reilly, Attorney General of Massachusetts, on brief for appellee Ruth N. Bramson, Massachusetts Administrator of Human Resources.

January 30, 2007

**BOUDIN, <u>Chief Judge</u>.** Linda Jeneski, who appeals from the dismissal of her civil rights action under 42 U.S.C. §§ 1983, 1985 (2000), was hired in 1988 by the City of Worcester, Massachusetts, to serve in a division of the city manager's office. Worcester had an executive order in place, dating from 1972, which provided that employees of the city manager's office were not subject to the civil service laws, <u>see</u> Mass. Gen. Laws ch. 31 (2006), leaving them as employees at will. In September 2002, Jeneski was laid off by the city.

In 2005, Jeneski brought the present action in federal district court against the city, certain of its officials and the state's Administrator of Human Resources, who is responsible for the state's civil service laws. In addition to federal civil rights claims--alleging deprivation of equal protection and due process--Jeneski asserted claims under state law based on wrongful discharge and other theories. She also sought class action status.

The district court dismissed the federal causes of action for failure to state a claim, Fed. R. Civ. P. 12(b)(6), and declined to exercise supplemental jurisdiction over Jeneski's state law claims. 28 U.S.C. § 1367(c)(3) (2000). We review the dismissal of the federal claims <u>de novo</u>, accepting all well-pleaded facts and giving the non-movant all reasonable inferences, not including "rhetorical flourishes, including unsupported conclusions

-2-

and assertions." Palmer v. Champion Mortgage, 465 F.3d 24, 25, 27 (1st Cir. 2006).

The operative 17-page second amended complaint contains a recitation of facts and grievances of which some are central to this appeal and others are not. Foremost is Jeneski's claim that from 1972 onward, Worcester attached the label of the city manager's office to a variety of city agencies and wrongfully exempted them under the 1972 city order from civil service protection. Jeneski says that the exemption was unlawful under Massachusetts state law and violated her constitutional rights.

The constitutional right principally urged by Jeneski is equal protection. The gist of this claim is that Worcester excluded a large group of employees, including Jeneski, from civil service protection otherwise required under state law. This, says Jeneski, was not only unlawful under state law but violated the Constitution by denying such employees equal treatment with others who remained protected.

If this were done in order to harm a specially protected class (e.g., a racial minority) or to burden fundamental constitutional rights (e.g., free speech), governmental authorities would have to provide a substantial or compelling justification (which one depends on the circumstances),[1] but there is no claim a

_____

[1]Craig v. Boren, 429 U.S. 190, 197 (1976) (gender classification); Korematsu v. United States, 323 U.S. 214, 216 (1944) (racial classification); Mass. Bd. of Retirement v. Murgia,

-3-

specially "suspect classification" is in use or that the aim of the 1972 executive order was to curtail free speech or some other constitutionally protected right.

In her complaint, Jeneski implies that her own discharge was connected to her criticism of city administration. But the classification of which she complains was adopted long before she was hired, and she has not made a first amendment claim. Absent a suspect classification or undue burden on fundamental constitutional rights, a classification made by government actors is vulnerable under the Equal Protection Clause only if no rational justification can be imagined for its use. Hoffman v. City of Warwick, 909 F.2d 608, 621-22 (1st Cir. 1990).

The only classification by the city or its officers is that the city by executive order exempted from civil service protection those who work for certain offices--broadly speaking, those nominally under the control of the city manager. If the city chooses to have more than ordinary trust in its city manager and wants to give him or her a free hand in personnel management, such a policy choice cannot be described as irrational.

Jeneski says that the district court was resolving inferences against her by speculating as to legitimate reasons for

---

427 U.S. 307, 313 n.3 (1976) (providing examples of recognized fundamental rights); Williams v. Rhodes, 393 U.S. 23, 30-31 (1968) (burden on first amendment rights). See generally Nowak & Rotunda, Constitutional Law ch. 14 (5th ed. 1995).

the action exempting city of Worcester employees. This is a misunderstanding of the minimum rationality test. The question is not what went on in the mind of the state actor but whether anyone, including the judge, can conceive of a rational reason for such a classification. Nordlinger v. Hahn, 505 U.S. 1, 11-12 (1992). In this case, special trust and greater flexibility are such a reason.

Jeneski says that this exemption was illegal under Massachusetts law. Although a city may exempt city managers and their staffs from ordinary civil service protections, Mass. Gen. Laws ch. 31, § 48, Jeneski says that Worcester did not meet the required statutory conditions and that in Worcester the city manager label was falsely assigned to some of the entities.

Possibly Worcester did act in violation of state law[2]--we do not decide the point--but a violation of state law is not by itself a constitutional violation. Hoffman, 909 F.2d at 623. Jeneski says that in Hoffman, the violation was a misdemeanor and here it is a felony. The fact remains that a classification that is minimally rational under equal protection principles does not become irrational because the step taken violates local law. Snowden v. Hughes, 321 U.S. 1, 11 (1944).

---

[2]Jeneski points to the passage of state legislation in August 2006 that specifically exempts employees in the city of Worcester's municipal offices, 2006 Mass. Legis. Serv. ch. 196, and to indications in background documents that it was sought by Worcester precisely to erase legal doubts.

As the Fifth Circuit explained in <u>Stern</u> v. <u>Tarrant County Hosp. Dist.</u>, 778 F.2d 1052, 1054 (5th Cir. 1985) (en banc), <u>cert. denied</u>, 476 U.S. 1108 (1986):

> We reaffirm today the settled constitutional rule that state agencies may pursue legitimate purposes by any means having a conceivable rational relationship to those purposes. A decision that passes constitutional muster under the rational-basis test does not violate the equal protection clause simply because it violates a state . . . statute.

Jeneski relies heavily upon <u>Baker</u> v. <u>Coxe</u>, 230 F.3d 470 (1st Cir. 2000), <u>cert. denied</u>, 532 U.S. 995 (2001), but its facts--delay in processing permits and alleged retaliation by government officials--have almost nothing to do with this case. <u>Baker</u> also effectively rejects Jeneski's efforts to recast a failed equal protection claim as one based on substantive due process. Apart from incorporation of more specific Bill of Rights provisions into the 14th Amendment, substantive due process has a very limited reach under modern precedent.[3]

Jeneski's brief also refers briefly to procedural due process but to what end is unclear. A procedural due process claim requires the plaintiff to allege that she has a property interest defined by state law and that she has been deprived of that property interest without adequate process. <u>PFZ Properties, Inc.</u>

---

[3]<u>Rochin</u> v. <u>California</u>, 342 U.S. 165, 172 (1952)("shocks the conscience" test); <u>see also</u> <u>Harrington</u> v. <u>Almy</u>, 977 F.2d 37, 44 (1st Cir. 1992); <u>Garcia by Garcia</u> v. <u>Miera</u>, 817 F.2d 650, 658 (10th Cir. 1987), <u>cert. denied</u>, 485 U.S. 959 (1988).

v. Rodriguez, 928 F.2d 28, 30 (1st Cir. 1991), cert. dismissed as improvidently granted, 503 U.S. 257 (1992). In her complaint, Jeneski has alleged neither.

In addition to section 1983, Jeneski invokes section 1985, 42 U.S.C. § 1985, which is directed so far as pertinent here to conspiracies to deprive another of equal protection. But as no colorable violation of equal protection has been alleged, the conspiracy claim has no purchase. Whether state law claims remain available to Jeneski is a matter that is not before us since the district court had discretion not to resolve them. Brennan v. Hendrigan, 888 F.2d 189, 196 (1st Cir. 1989).

Finally, Jeneski's brief says that there was "fraudulent concealment" by the city--a phrase ordinarily relevant to statute of limitations questions--and that the district court failed to recognize that fact. In the district court, Jeneski apparently alleged fraudulent concealment in at least two different contexts: in response to a statute of limitations defense and in explaining why she had not exhausted possible state remedies so far as this might be a required predicate to a procedural due process claim.

The grounds on which we affirm the district court's dismissal do not depend on a statute of limitations defense. And, as we do not think that the second amended complaint fairly asserts the elements of a procedural due process claim, the question

whether state remedies have been exhausted is also not one that needs to be addressed to sustain the district court's judgment.

Affirmed.